THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. AMBROSE FULLER.

No. 14,100.    (84 Pac. 140.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Licensee—Assumption of Risk.* One who undertakes to cross the yards of a railroad company in a populous city at a place other than a public crossing, although on a well-defined path which has been in constant use by the public for a number of years, assumes the risk of injuries from coming in contact with semaphore wires, or any other stationary appliances or devices which are convenient or necessary for the safe operation of trains.

2. —— *Path Used without Objection—Duty to Traveler.* A railroad company owes no duty to the public to keep in safe repair for pedestrians a path across its yards which the public has been in the habit of using for its own convenience, without objection. Nor does the fact that no objection has been made imply that the company will not, without special warning, obstruct such path with mechanical appliances and machinery which may become essential or convenient for the safe and proper operation of the business conducted in its yards.

Error from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed January 6, 1906. Reversed.

STATEMENT.

THE plaintiff in error seeks by this proceeding to reverse a judgment obtained against it by Ambrose Fuller

for personal injuries which resulted to him from falling over a semaphore wire in its yards in the city of Wichita. In 1879 the right of way now owned by the Atchison, Topeka & Santa Fe railroad through the city of Wichita was condemned for that purpose. Afterward one Perry, who was the owner of certain land through which the right of way had been condemned, caused to be surveyed and platted Perry's addition to the city of Wichita, with the streets and alleys dedicated to the public use. In this addition is Mosely avenue, running north and south. The avenue has never been opened across the company's right of way. Pedestrians on the south, wishing to go north, followed Mosely avenue to the intersection of the right of way, where they crossed the yards of the company by a path which, according to some of the testimony, had been in constant use for ten or twelve years without objection from the railway company.

About six months prior to plaintiff's injury the railway company placed semaphore wires along the west side of its track and across this path, about two feet from the ground. The plaintiff, having business that called him from the north to the south side of the yards, started to cross by this path. After passing upon the right of way and into the company's yards he came in contact with these semaphore wires, and, not knowing they were there, fell over them and struck his face against the ends of the ties or rails, and received the injuries for which he recovered damages. The negligence charged against the company was in placing these semaphore wires across this path without boxing them or putting them under the ground. This was the first time that the plaintiff had ever been in that vicinity, and the first time that he had ever attempted to use this path across the yards of the company.

The jury found that the semaphore wires were used as signals for trains; that their maintenance and operation by the company at the time in question were

useful and essential for the safe and convenient operation of the trains upon defendant's tracks; that the defendant's negligence which renders it liable to the plaintiff was in placing the wire across the path without protecting it by boxing and placing the box in the ground.

*William R. Smith, A. A. Hurd, O. J. Wood, Hurd & Hurd, J. D. Houston,* and *Alfred A. Scott,* for plaintiff in error.

*Dale & Amidon,* and *James L. Dyer,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: By reason of changes in the personnel of this court this cause has been twice submitted for argument, and counsel for both parties have been faithful and diligent in their efforts to assist the court in arriving at a correct conclusion.

The path upon which the plaintiff attempted to cross the yards was one that had been traveled by a number of pedestrians living on Mosely avenue south of the company's line of road. It had been so continuously and constantly used that it was well defined, and was of itself an implied invitation to pedestrians to use it to cross from one side of the right of way to the other. The plaintiff was not, therefore, a trespasser, but was there at the implied invitation of the company, resulting from a long and continuous use of this path by the public without objection by the company.

This path, however, passed over the yards of the railway company in a populous city, where many trains were being operated daily, with all appliances and mechanical devices necessary and essential to insure the greatest safety to the traveling public. When the plaintiff entered upon this path he did so knowing that he was in a city, and would find there railroad-tracks and cars and mechanical devices used in such

34—72 KAN.

railroad yards. The jury in their finding stated that the semaphore wires were useful and essential for the safe and convenient operation of the trains in the yard. He therefore entered upon his passage over the yard chargeable with the knowledge that he would probably have to cross semaphore wires, switches, tracks, and all other devices and appliances convenient or essential for the speedy and safe operation of trains in the most convenient and safest manner known to railroad science. The public safety demands of all railroad companies the employment of such safety appliances, machinery, and other devices, and the law will tolerate none other.

The acquiesence of a railroad company in the crossing of its tracks by pedestrians in order to shorten distances at any particular place does not grant an easement to the public, nor cast upon the company the responsibility of keeping a path thus made in a safe condition for pedestrians. This principle is conceded, but it is stoutly contended that if one who permits his premises to be used by the public as a way should, without warning, negligently place an obstruction on or so near the passage that injury results to one who is in the exercise of the implied invitation, he would be liable. Conceding this rule, its inapplicability to the facts of this case makes it immaterial.

The business conducted in the yards of a railroad company in a city is inherently dangerous to pedestrians, and all persons endeavoring to cross such yards are warned of this fact. No special notice is required of this danger. The danger does not arise entirely from the operation of trains, but from the continual changes made in the surface of the earth. The pedestrian who crosses the yards of a railroad company in the morning, on a path made by constant use of the public, has no assurance that this path will remain unobstructed until noon. Notwithstanding the implied invitation, one who undertakes to cross railroad yards in a city by a path does so knowing that the land upon

which he travels has been dedicated to a public use, the demands of which are ever changing and increasing, that these demands must be met by this public utility, and that for these purposes the yards are laid with tracks, switches, semaphore wires, and all other machinery and devices known to railroad science for moving cars and trains rapidly and with the greatest safety. This the public demands. Such a person assumes the risk of coming in contact with all such useful contrivances and essential devices. The implied invitation is given and accepted upon these conditions.

The rule that one who permits the public to use his property as a passageway cannot have a dangerous place unprotected and in close proximity to the passageway without incurring liability for damages is well sustained by the authorities, but such cases are distinguishable from the one under consideration. The case of *DeTarr v. Heim,* 62 Kan. 188, 61 Pac. 689, which carries the principle to the limit, has no features similar to the present case. There the public had habitually used a path over the vacant part of a lot. Near the path stood a water-closet, under which was a vault. The owner of the lot removed the closet and covered the vault with boards, which soon became unsafe and were not repaired. DeTarr, in attempting to follow the path, missed her way in the darkness of the night, and fell into the vault. That path crossed an unoccupied portion of a lot, not used by its owner in conducting a business which was of itself notice that it was dangerous for the public to use it. Nor was it being used in conducting a business which required the surface to be changed or altered frequently. Nor did the accident come to DeTarr from coming in contact with an instrument necessary in conducting the business on the premises, and with the knowledge of the existence of which DeTarr was chargeable.

Nor does this case come within the rule of the cases where one undertakes to cross a railroad-track or yards upon a well-defined path and is injured by the

negligence of the company's employees in the operating of a train. With the rule and the reason stated in such cases by this court we are satisfied. As a matter of law the company was not guilty of negligence in not boxing its semaphore wires at the crossing of the path.

The judgment is reversed and the cause remanded.

BURCH, PORTER, GRAVES, JJ., concurring.

MASON, J. (dissenting) : The railway company was under no obligation to keep the path in question where it crossed the track in a condition suitable for the use of foot travelers, but so long as it permitted a state of affairs to exist which amounted to an invitation to the public to use the path it was bound not to do anything to subject a person accepting such invitation to a concealed danger—one which could not be discovered by the use of reasonable diligence. The foot traveler using this path was required to take notice that he might find in proximity to the railroad-track any mechanism necessary for the operation of the road, provided he could learn of its presence by the ordinary exercise of his faculties. The semaphore wire may have been so nearly invisible as to be considered absolutely so for all practical purposes, in which case the company may be deemed negligent in placing it across the path at such a height that it would be likely to trip one using the path without taking some steps to render it visible or to give notice of its presence. The company was under no obligation to bury or box the wire, but it was a fair matter for the determination of the jury whether, under all the circumstances present, a reasonable regard for the safety of the public did not require either that the invitation to use the path should be withdrawn by the interposition of some kind of a barrier or that the wire at this place should have been so marked as to render it plainly visible. Upon these considerations I dissent from the conclusions reached by the majority of the court.

I am authorized to say that Chief Justice JOHNSTON and Mr. Justice SMITH join in this dissent.